UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-cr-93 (JRT/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **THE GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS** |
| ROBBIN ALLEN THOMAS, | |
| Defendant. | |

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Alexander D. Chiquoine and Ruth S. Shnider, Assistant United States Attorneys, hereby submits its response to defendant Robbin Thomas' Motions to Suppress (Dkts. 47–48).

## SUPPRESSION MOTIONS

Thomas moves to suppress all evidence recovered during the February 19, 2021 traffic stop of his vehicle and the subsequent search of his residence, claiming that (1) the traffic stop was not supported by reasonable suspicion; (2) the warrantless search of the vehicle did not fall within an exception of to the warrant requirement; and (3) the warrant to search his residence did not set forth adequate nexus between the residence and drug evidence. (Dkt. 47).

Thomas also moved to suppress two sets of statements. (Dkt. 48). However, on February 16, 2022, the Defendant—through standby counsel—informed the Government that he was no long pursuing his motion to suppress statements.

1

Therefore, the Government considers that motion withdrawn and does not address it here.

### A. Factual Background

The Government expects that the testimony and other evidence at the motions hearing will establish the following facts.

Shortly before noon on February 19, 2021, Anoka County Sheriff's Deputy Nate Arcand was patrolling near a residence on 149th Avenue NE in Ham Lake, which was known to be occupied by Thomas and others, and was frequently associated with unlawful activity. Deputy Arcand observed Thomas (who he knew from past encounters) pull out of the barn driveway in a blue Ford pickup and head west on 149th Avenue NE. Deputy Arcand knew Thomas to have a suspended driver's license, so he activated his lights for a traffic stop. Thomas pulled into the main driveway of the property, down the road, and immediately exited his vehicle, accusing Deputy Arcand of harassing him and otherwise behaving erratically. Deputy Arcand could smell marijuana coming from Thomas and the vehicle. Thomas told Deputy Arcand that he had purchased the vehicle the day before and was in the process of transferring title and insurance.

During this conversation, Deputy Arcand could see that Thomas had knives on his waistband and asked to remove them so that he could "be more comfortable" during the encounter—Thomas complied. Deputy Arcand then went to run checks in his squad (including confirming Thomas' license was suspended) while Thomas continued to pace around his truck. Deputy Arcand emerged from his squad and

asked Thomas some further questions, including if he had any marijuana on him. Thomas stated there was some on the ground "over there" (pointing to an area where he had been standing), but claimed that it was not his. Deputy Arcand found a small bag of marijuana on the driveway that looked like it had just been dropped.

Deputy Arcand then pat-searched Thomas and began to search the driver's area of the vehicle. He promptly found a loaded 9mm Bersa firearm tucked to the side of the driver's seat. The gun came back stolen out of Roseville. Thomas was cuffed and secured in a squad while officers searched the rest of the vehicle. On the front passenger seat there was a laptop bag containing over a pound of meth, a .40 caliber magazine, and several small bags of marijuana. On the floor of the backseat, under some items, was a red duffel bag found to contain six additional one-pound packages of meth.

Officers later drafted a warrant to search the residence. In the basement bedroom occupied by Thomas, officers found about a pound of what they initially believed was heroin in a dresser drawer— subsequent lab testing showed that it was in fact more methamphetamine. Later examinations located Thomas' DNA on drug packaging from both the vehicle and the bedroom.

B. <u>Motion to Suppress Evidence from Vehicle and Residence (Dkt. 47)</u>

Thomas' challenge to the traffic stop and vehicle search should be denied. Thomas clearly was operating his vehicle without a valid license, which provided sufficient basis for a traffic stop. Although Thomas claimed it was improper for the Deputy Arcand to pull him over "on his own property," that claim is baseless for multiple reasons. For one thing, Thomas was captured on squad cam clearly driving on the public roadway (149th Avenue NE) before he was stopped:

 

And in any event, the "statute prohibiting driving after revocation of license does not require operation of a motor vehicle on a street or highway for its violation." *State v. Bauman*, 552 N.W.2d 576, 578 (Minn. Ct. App. 1996) (same statutory language as driving after suspension).

Following the initial stop, the Deputy Arcand's various observations—including the odor of marijuana, the bag of marijuana discarded on the ground, and Thomas' erratic behavior—gave rise to probable cause to search the vehicle. *See, e.g., United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) ("the smell of marijuana gave the deputy probable cause to search Peltier's truck for drugs"); *United States v.*

4

*Beard*, 708 F.3d 1062, 1065 (8th Cir. 2013) ("The smell of marijuana in a vehicle can establish probable cause to search the vehicle for drugs.").

In the alternative, Deputy Arcand was authorized to conduct a "protective sweep" of the driver's area at the time he first found the gun: early in the encounter, he could see Thomas had two knives tucked into his belt and removed them for his safety. Thomas was still unsecured and walking around when Deputy Arcand then went into the driver's area and almost immediately observed the gun. Officers may conduct a protective sweep of a car when they believe the driver may be armed and dangerous, particularly if the driver is unsecured in the area. *See, e.g., United States v. Scott*, 818 F.3d 424, 430 (8th Cir. 2016) ("[W]hen police officers have reasonable suspicion to conclude that the driver of a car is armed and dangerous, they are entitled to search not only the driver's person but also the driver's car for any weapons that might endanger the officers."); *United States v. Goodwin-Bey*, 584 F.3d 1117, 1120–21 (8th Cir. 2009) ("[A] reasonably prudent officer on the scene would be warranted in believing that Goodwin-Bey and his unsecured passengers were dangerous and might access the vehicle to gain immediate control of weapons."). And of course, once the gun was recovered, there can be no doubt that any further search of the vehicle was supported by probable cause.

As to the search of the residence, which was conducted pursuant to a search warrant, the Government understands Thomas to be seeking a four-corners review of the affidavit. That affidavit sets forth probable cause to believe evidence of drug trafficking will be found in the residence, or at a minimum good faith applies. The

Government previously provided the search warrant and affidavit to the Court and the Defendant (marked Gov't Ex. 3). It will be prepared to present those documents again at the hearing, if necessary.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth at the upcoming motions hearing and in any additional briefing, Thomas' motions to suppress should be denied.

Dated:  February 18, 2022

        Respectfully Submitted,

        CHARLES J. KOVATS, JR.
        Acting United States Attorney

        */s/ Alexander D. Chiquoine*

BY:  ALEXANDER D. CHIQUOINE
       RUTH S. SHNIDER
       Assistant U.S. Attorneys