**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

UNITED STATES OF AMERICA,

                                         Crim. No. 21-093 (JRT/TNL)

              Plaintiff,

v.                           **MEMORANDUM OPINION AND ORDER**

ROBBIN ALLAN THOMAS,

                    Defendant.

Alexander D. Chiquoine, Andrew S. Dunne, and Ruth Shnider, **UNITED STATES ATTORNEY'S OFFICE,** 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for plaintiff.

Robbin Allen Thomas, #25412, Sherburne County Jail, 13880 Business Center Drive Northwest, Elk River, MN 55330; Steven J. Wright, **LAW OFFICE OF STEVEN J. WRIGHT**, 331 Second Avenue South, Suite 705, Minneapolis, MN 55415, for plaintiff.

Thomas has been charged with one count of possession with intent to distribute 500 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  Thomas has asked the Court to (1) suppress evidence found during the search and seizure at issue here; (2) dismiss the indictment for lack of jurisdiction; and (3) dismiss the indictment as defective.  The Magistrate Judge took all three motions under advisement and issued a Report and Recommendation ("R&R") recommending that they be denied.  Because Thomas did not raise substantive or persuasive objections as to the Magistrate Judge's recommendations on the Motions to Dismiss, the Court will adopt the Magistrate Judge's recommendation and deny both.  Because Thomas has not shown that

the search and seizure were unconstitutional, the Court will overrule his objections to the

R&R, adopt the Magistrate Judge's conclusions on the issue, and deny Thomas' Motion to

Suppress Evidence.

**BACKGROUND**

**I.      FACTUAL BACKGROUND**

The Court adopts the detailed factual background laid out in the R&R.  In brief,

Deputy Arcand is a Sheriff and has worked for the Anoka County Sheriff's Office for

approximately eight years.  (Mar. 18, 2022 Mot. Hr'g Tr. ("Hr'g Tr.") at 26:8–27:12, 28:6–

14, Mar. 28, 2022, Docket No. 102.)  On February 19, 2021, Deputy Arcand was on duty

and had been briefed about a potentially stolen vehicle, a red pickup truck, located at

3905 149th Avenue Northeast in Ham Lake, Minnesota ("Defendant's residence").  (Hr'g

Tr. at 33:11–15, 37:9–13.)  Deputy Arcand testified he was familiar with Defendant's

residence, it was known to be involved in criminal activities, and he had been to

Defendant's residence and interacted with Thomas multiple times, including the three

days leading up to February 19.  (Hr'g Tr. at 33:10–11, 34:13–19, 36:1–3, 82:17–83:5.)

Deputy Arcand estimated he had interacted with Thomas six to ten times and was familiar

with what Thomas looked like.  (Hr'g Tr. at 35:10–22, 49:10–14, 82:10–16.)  Deputy

Arcand was also aware that Thomas' driver's license was suspended as he had run

Thomas' name several times prior to February 19, including in the days leading up to

February 19.  (Hr'g Tr. at 36:16–18, 53:3–5, 96:11–25.)

While investigating the potentially stolen red vehicle at Defendant's residence Deputy Arcand observed a blue pickup truck leave the Defendant's residence, get onto 149th Avenue Northeast and head westbound. (Hr'g Tr. at 28:16–29:4, 38:11–18.) Deputy Arcand accelerated after the blue pickup truck and ran its registration. (Hr'g Tr. at 38:17–21, 96:9–11.) As he was running the registration, Deputy Arcand was able to identify Thomas as the driver of the blue pick up truck based on his familiarity with the residents at Defendant's residence and his observations of Thomas through the vehicle's rearview mirror, back window, and side window. (Hr'g Tr. at 39:3–19.) In particular, Deputy Arcand knew what Thomas looked like including his hairstyle, demeanor, height, weight, size, and skin tone. (Hr'g Tr. at 92:2–93:15.) Based on his observations, Deputy Arcand testified that he was confident the driver was Thomas and that he had identified Thomas right before he activated his emergency lights. (Hr'g Tr. at 92:11–12, 88:22–23.)

Deputy Arcand activated his emergency lights as Thomas turned into a different driveway leading up to Defendant's residence because he knew Thomas had a suspended license and could not drive on 149th Avenue Northeast. (Hr'g Tr. at 39:22–40:11.) The blue pickup truck came to a stop on a driveway in Defendant's residence and Thomas immediately opened his driver's side door. (Hr'g Tr. at 49:15–23; Gov't Ex. G-1 ("Dash Cam Video") at 00:33–00:35.) When Deputy Arcand observe Thomas open the driver's door he immediately yelled "Hey, Robbin, stay in the truck." (Dash Cam Video at 00:37–00:38.) When Deputy Arcand made this statement, Thomas had not yet gotten out of the

truck nor did Deputy Arcand have any additional viewpoints of the driver other than the ones he had when deciding to make the stop.  (Hr'g Tr. at 47:18–25.)  Thomas got out of the truck and started walking towards Deputy Arcand, Deputy Arcand continued to tell Thomas to go back to the truck.  (Hr'g Tr. at 49:7–23; Dash Cam Video at 00:39–00:53.)

When Thomas did not listen, Deputy Arcand got out of his squad car, told Thomas that he did not have a license, and walked him back towards the blue truck.  (Hr'g Tr. at 52:19–53:2; Dash Cam Video at 00:56–00:57.)  Thomas and Deputy Arcand continued their interaction at the blue pickup truck where Deputy Arcand reviewed the paperwork and title for the car.  (Hr'g Tr. at 54:16–55:1.)  While at the car, Thomas stated "You know it's me man, you know it's me" to which Deputy Arcand responded by saying "I know, that's why I stopped you."  (Gov't Ex. G-2 ("Body Cam Video") at 3:06–3:26.)  Deputy Arcand removed knives from Thomas' waistband for officer safety.  (Hr'g Tr. at 57:7–12; Body Cam Video at 3:33–3:40.)  Deputy Arcand and Thomas continued talking at the blue pickup truck, where Deputy Arcand asked him about the red pickup truck on the property.  (Hr'g Tr. at 57:19–58:2; Body Cam Video: at 3:56–4:38.)  Deputy Arcand then wiped an area of the windshield of the blue pickup truck because, as he testified, he was trying to view the VIN number to compare to the VIN on the title.  (Hr'g Tr. at 58:10–15.)  Deputy Arcand then walked back to his squad car.  (Body Cam Video at 5:28–5:50.)

Deputy Arcand testified he noticed the smell of marijuana during the course of the traffic stop as he had been trained to detect it.  (Hr'g Tr. at 60:14–25.)  He testified he first

noticed the smell while talking to Thomas outside of the car and when he checked the

VIN, but could not identify the exact moment he noticed it. (Hr'g Tr. at 60:14–20, 141:4–

6.) At his squad car, Deputy Arcand ran Thomas' name and the VIN and conducted a local

record check which showed that Thomas was clear of warrants but that his license was

suspended. (Hr'g Tr. at 62:21–63:14.)

Deputy Arcand walked back to the truck and started discussing the title paperwork

and purchase of the vehicle until another Anoka County Sherriff arrived. (Body Cam Video

7:22–10:11.) It was at this point that Deputy Arcand began inquiring about the marijuana

and the officers were able to locate the narcotics at issue here. (Body Cam Video at

10:41–14:34; 20:58–24:11.)

## II.      PROCEDURAL HISTORY

Thomas was charged with one count of possession with intent to distribute 500

grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(A). (Indictment, Apr. 15, 2021, Docket No. 1.) Thomas filed a Motion to

Suppress Evidence Obtained by Search and Seizure, a Motion to Dismiss Due to Lack of

Jurisdiction, and a Motion to Dismiss with Prejudice Defective Indictment. (Mot. Suppress

Evidence, Sept. 8, 2021; Mot. Dismiss Lack Jurisdiction, Feb. 4, 2022, Docket No. 89; Mot.

Dismiss Prejudice Indictment, Apr. 6, 2022, Docket No. 104.) A hearing was held before

the Magistrate Judge on the Motion to Suppress and the Motion to Dismiss for Lack of

Jurisdiction on March 18, 2022. (Minute Entry, Mar. 18, 2022, Docket No. 100.) On April

26, 2022 another hearing took place before the Magistrate Judge to address the Motion

to Dismiss Indictment.  (Minute Entry, Apr. 26, 2022, Docket No. 118.)  The Magistrate

Judge issued a Report and Recommendation ("R&R") recommending that all three

motions be denied.  (R&R, June 6, 2022, Docket No. 130.)

## DISCUSSION

### I.    STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written

objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2);

*accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate

judge's report and recommendation to which objections are made and provide a basis for

those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn.

Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected

to" portion of an R&R.[1]  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections

which are not specific but merely repeat arguments presented to and considered by a

magistrate judge are not entitled to de novo review, but rather are reviewed for clear

error."  *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

### II.   ANALYSIS

---

[1] De novo means that this Court will review the evidence and the law independently, so the Magistrate Judge's prior opinion has no influence on how the Court reviews the issues.  In essence, the Court will review the case from the start, as if it is the first court to review and weigh in on the issues.

Thomas only raises substantive objections to the R&R's discussion of his Motion to Suppress.[2]  Each of his objections are addressed below.

## A.  Traffic Stop

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014).  A traffic stop must be supported by reasonable suspicion or probable cause.  *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012).  Reasonable suspicion exists "when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed."  *Id.*  Probable cause exists when a reasonable officer "could have believed that there was a fair probability that a violation of law had occurred."  *United States v. Holly*, 983 F.3d 361, 364 (8th Cir. 2020). "Even an officer's incomplete initial observations may give reasonable suspicion for a

---

[2] As to the Motion to Dismiss with Prejudice the Defective Indictment, Thomas briefly argues that there was no true bill provided to him, so the Indictment was defective.  The Magistrate Judge did not discuss a true bill in the R&R and therefore this objection is improper. Furthermore, the Magistrate Judge appears to have resolved this issue during his April 26, 2022 hearing on the motion.  As to his Motion to Dismiss Due to Lack of Jurisdiction, Thomas claims that the Magistrate Judge was "dismissive about the treaty of peace and friendship" and this constitutes a reason to decline to adopt the R&R.  (Obj. to R&R at 21.)  The Court does not agree. First, Thomas is repeating an argument already made to the Magistrate Judge, so the Court need only review for clear error.  *Montgomery,* 98 F. Supp. 3d at 1017.  Second, the Magistrate Judge was not dismissive about this argument, in fact, the Magistrate Judge spent over four pages addressing it in the R&R.  (R&R at 36–40.)  The Court finds that the Magistrate Judge committed no clear error when addressing Thomas' jurisdiction arguments.  Thus, any objection Thomas raises to that portion of the R&R is overruled.

traffic stop[.]" *Id.*  If an officer has reasonable suspicion or probable cause to support the traffic stop, their ulterior motivations are irrelevant. *United States v. McLemore*, 887 F.3d 861, 864 (8ᵗʰ Cir. 2018).

Thomas raises two main objections to the Magistrate Judge's conclusion that Deputy Arcand complied with Fourth Amendment requirements.  First, he spends a significant amount of time arguing that Deputy Arcand was not credible in his testimony when he stated he was able to identify Thomas prior to initiating his emergency lights. Thomas argues that Deputy Arcand lacks credibility because there was tape covering the side mirrors entirely, Deputy Arcand had never seen him drive that car, and Deputy Arcand could not see through the back window.

After reviewing the testimony of Deputy Arcand and the video evidence, the Court finds that Deputy Arcand's testimony that he identified Thomas as the driver prior to initiating the traffic stop is credible.  Even if the side mirrors were covered entirely with tape, or even if Deputy Arcand's view through the back window was impacted by a tint and decal sticker, his training and experience make credible his assertions that he was able to identify Thomas using all the mirrors and windows on the car.  (Hr'g Tr. at 38:25–39:19.)  The Dash Camera Video is not inconsistent with any of Deputy Arcand's testimony.  No extrinsic evidence clearly contradicts Deputy Arcand's testimony nor is it internally inconsistent or implausible on its face. *Holly*, 983 F.3d at 364.

8

Furthermore, several other facts confirm the credibility of Deputy Arcand's testimony.  Deputy Arcand knew Defendant's residence, had several interactions with Thomas in the past, including very recently, and knew the other residents currently living at Defendant's residence.  Deputy Arcand was, therefore, very familiar with what Thomas looked like, lending credibility to his assertion that he was able to identify Thomas. Deputy Arcand saw the blue pickup truck leave Defendant's residence, making it more plausible that the driver was a resident.  And Deputy Arcand, could have, through deduction, eliminated the other residents after viewing the physical characteristics of Thomas through the mirrors and windows.

Lastly, Deputy Arcand and Thomas' conversation indicates that Deputy Arcand's testimony is credible.  Deputy Arcand called out Thomas' name as he opened the door of the pickup truck but prior to Deputy Arcand seeing Thomas' face.  (Hr'g Tr. at 47:18–25.) And during their discussion where Thomas stated that Deputy Arcand knew who he was, Deputy Arcand responded by stating "I know, that's why I stopped you."  (Body Cam Video at 3:06–3:26.)    Based on Deputy Arcand's experience, his observations, and the surrounding circumstances, the Court finds that Deputy Arcand's testimony that he was confident Thomas was the driver prior to initiating his emergency lights is credible.

Thomas also claims that the stop was not supported by reasonable suspicion or probable cause because, he alleges, Deputy Arcand must have verified no later than 24 hours prior to the stop that Thomas' driving privileges were revoked.  Thomas does not

9

cite any case or statute which stands for this rule.[3]  Furthermore, Deputy Arcand credibly testified that he had run Thomas' name several times in the days leading up to February 19 and therefore had recently confirmed that Thomas' license was suspended.

The traffic stop was supported by probable cause because, based on Deputy Arcand's observations and knowledge of Thomas, there was a fair probability Thomas had committed a traffic violation when he drove on a public road with a suspended driver's license.  Thomas' objections to the R&R's conclusions on the constitutionality of the initial traffic stop are overruled and the Court will adopt the R&R's recommendation on this issue.

### B.  Prolongment of the Stop

Thomas challenges the length of the stop, arguing that Deputy Arcand impermissibly extended its scope and duration.  In particular, Thomas takes issue with the fact that seven minutes[4] elapsed between the initial stop and Deputy Arcand returning to his vehicle.   During this time, Thomas asserts he never delayed Deputy Arcand's investigation, produced the required paperwork, and answered Deputy Arcand's questions—though he claims many of those questions were irrelevant to the traffic stop.

---

[3] Thomas cites *State v. Rosenbush* for this proposition but the court's discussion of whether the defendant's driving privileges were revoked related to whether the defendant's conviction could be sustained.  2008 Minn. App. Unpub. LEXIS 1024, at *8–9 (Minn. Ct. App. Aug. 26, 2008).   Furthermore, the court never stated that the officer must have verified that the license was revoked before stopping the vehicle nor does it make any reference to a 24 hour requirement.

[4] It was approximately 5 minutes between Deputy Arcand stopping Thomas and his return to his squad car.  (Dash Cam Video at 5:45.)

Thomas also argues that Deputy Arcand had no reasonable suspicion to extend the stop to investigate additional criminal activity.

"A constitutionally permissible traffic stop becomes unlawful when its length exceeds the time needed to attend to the stop's 'mission' and 'related safety concerns.'" *United States v. Soderman*, 983 F.3d 369, 374 (8th Cir. 2020) (citing *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015).  An officer may lawfully continue the traffic stop until "tasks tied to the infraction" are, or should reasonably have been, completed. *Soderman*, 983 F.3d at 374.  Completion of the tasks can be somewhat time-consuming and can include a computerized check of the vehicle's registration, the driver's license, and criminal history as well as preparing a citation or warning. *United States v. Quintero-Felix*, 714 F.3d 563, 567 (8th Cir. 2013).  An officer may ask travel related questions and may ask unrelated inquiries so long as the inquiries "do not measurably extend the duration of the stop." *United States v. Espinoza*, 885 F.3d 516, 523 (8th Cir. 2018); *Rodriguez*, 575 U.S. at 354.

Once all the tasks are complete, further detention is unreasonable unless, based upon the responses and circumstances, the officer discovers information leading to reasonable suspicion. *Quintero-Felix*, 714 F.3d at 567; *United States v. Jones*, 269 F.3d 919, 926–27 (8th Cir. 2001.)  Again, reasonable suspicion exists "when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." *Id.*

The nature of Deputy Arcand's questioning was permissible.  Deputy Arcand's questions related to the ownership of the vehicle, insurance of the vehicle, its registration, and Thomas' driving status.  Determining these issues are all tasks related to the traffic infraction.  Though the tasks took some time to complete, the lengthiness of the tasks was a result of Thomas taking time to answer, including attempting to call someone to prove he had just purchased the car.  Deputy Arcand did not, contrary to Thomas' assertion, ask the same questions over and over.  In addition to completing his tasks, Deputy Arcand was also responding to Thomas' assertions that police officers were harassing him, which extended the duration of the stop.

By the time Deputy Arcand came back to his vehicle, he had reasonable suspicion that there was some sort of criminal activity as he had smelled marijuana, thus any questioning that took place between Deputy Arcand and Thomas after Deputy Arcand returned from his squad car was justified by his reasonable suspicion.  It was appropriate for him to extend the stop at that point to wait for another officer to arrive at the scene prior to asking questions regarding the suspected criminal activity.

Furthermore, removing Thomas' knife was appropriate to ensure officer safety regardless of Deputy Arcand's subjective belief of the threat posed by Thomas or his dog.  Deputy Arcand's questions about where Thomas was going are permissible travel related questions.  His unrelated inquiry regarding the red pickup truck did not measurably extend the duration of the stop as that inquiry lasted a total of 16 seconds.  (Body Cam

Video at 3:55–4:11.)  In sum, the stop was not impermissibly extended and Thomas'

objection to the R&R as it relates to this conclusion is overruled.

Next, Thomas challenges whether Deputy Arcand had reasonable suspicion based

upon his testimony that he smelled marijuana during his initial conversation with Thomas

and while he was checking the VIN on the car.  (Hr'g Tr. at 60:14–20.)  Specifically, Thomas

states it was too cold to smell marijuana, Deputy Arcand was far away from the alleged

source, and COVID-19 is another factor making it difficult to smell the marijuana.  As to

Thomas' assertion that the cold and COVID-19 impacted Deputy Arcand's ability to smell

the marijuana, Thomas has provided no evidence to support either assertion.  As to

Thomas' assertion that Deputy Arcand was too far away from the alleged source, in his

body camera footage Deputy Arcand comes within inches of the truck and at times stands

behind the open front door.  This is sufficiently close to be able to smell marijuana.

Furthermore, Deputy Arcand testified that he has been trained in the odor of marijuana

and can even detect a difference between fresh leaf marijuana and burnt marijuana.  (Hr'g

Tr. at 60:21–25.)  The Court finds Deputy Arcand's testimony that he smelled marijuana

during his initial conversation with Thomas and while he was checking the VIN on the

vehicle as credible.  Therefore, Thomas' objections to the Magistrate Judge's conclusion

that Deputy Arcand did not impermissibly prolong the duration and scope of the stop and

that he had reasonable suspicion to extend the stop are overruled.

### C.  Seizure

Finally, Thomas objects to the Magistrate Judge's R&R on the grounds that the seizure began when Deputy Arcand began to follow Thomas, not when he activated his emergency lights, and the seizure was, therefore, not supported by probable cause or reasonable suspicion.   Thomas claims that Deputy Arcand's hot pursuit of the truck, reaching speeds double and triple that of Thomas, was a show of force and constitutes a seizure.  Thomas asserts the emergency lights were merely warning signs to pedestrians.

A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *California v. Hodari D.*, 499 U.S. 621, 637–38 (1991).  "The touchstone of a seizure is the restraint of an individual's personal liberty in some way." *Id.*  When the police officer's actions do not show an unambiguous intent to restrain or the individual's submission to a show of governmental authority takes the form of passive acquiescence, a seizure occurs if "in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *Brendlin v. California*, 551 U.S. 249, 255 (2007).

The Eighth Circuit has held that mere pursuit of a vehicle does not constitute a seizure if it does not produce a stop. *Cole v. Bone*, 993 F.2d 1328, 1332 (8th Cir. 1993).  As Thomas admits himself, Deputy Arcand's acceleration in order to pull closer to Thomas' car did not produce a stop because Thomas pulled to the side of the road to allow Deputy Arcand to pass, as he assumed the squad car was on its way to an emergency.  It was not until Deputy Arcand followed Thomas onto his personal property and initiated his

emergency lights that a stop occurred.  To hold that a seizure occurs any time a police

officer speeds up to follow a car in order to determine whether that car is committing a

traffic violation would overextend Fourth Amendment protections.  In light of all the

circumstances, a reasonable person would believe that a police car speeding up behind it

did not restrict their liberty, and Thomas clearly did not believe his liberty was restricted

either as he attempted to pull out of the way of the squad car, not stop for it.  Thus,

Thomas' challenge to the reasonableness of the stop is unpersuasive and his objection to

the R&R is overruled.

## CONCLUSION

The Court will overrule Thomas' objections to the R&R and adopt the conclusions

of the R&R in full.  As such, Thomas' Motion to Suppress Evidence, Motion to Dismiss Due

to Lack of Jurisdiction, and Motion to Dismiss with Prejudice Defective Indictment are all

denied.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, the

Court **OVERRULES** Defendant's Objections to the Report and Recommendation [Docket

No. 131], and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket

No. 130].  **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Evidence Obtained by Search and Seizure

    [Docket No. 47] is **DENIED**;

2.  Defendant's Motion to Dismiss Due to Lack of Jurisdiction [Docket No. 89] is

    **DENIED**;

3.  Defendant's Motion to Dismiss with Prejudice the Defective Indictment [Docket

    No. 104] is **DENIED.**


DATED: July 22, 2022                     _____
at Minneapolis, Minnesota.                      JOHN R. TUNHEIM
                                             United States District Judge