UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-093 (JRT/TNL)

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | **GOVERNMENT'S POSITION ON SENTENCING** |
| ROBBIN ALLEN THOMAS, | |
| Defendant. | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Ruth Shnider and Alexander Chiquoine, Assistant United States Attorneys, hereby respectfully submits its position on sentencing with regard to Defendant Robbin Thomas. For the reasons set forth below, the Government submits that the appropriate sentence is 180 months.

## BACKGROUND & PRESENTENCE INVESTIGATION

On July 18, 2022, Mr. Thomas pleaded guilty to one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A). The charge in the indictment arises from an incident that took place in Anoka County, Minnesota, on February 19, 2021. (*See generally* PSR ¶¶ 7-8; R&R at 3-16, ECF No. 130). Mr. Thomas was driving a vehicle near his residence in Ham Lake when he was stopped by Anoka County Sherriff's Deputy Nate Arcand for driving without a license. Mr. Thomas was the sole occupant of the vehicle, and he told Deputy Arcand the vehicle belonged to him. Mr. Thomas was behaving erratically and attempting to keep the deputy from going near the

1

vehicle.  Deputy Arcand smelled marijuana and ultimately located a bag of marijuana on the ground that Mr. Thomas had just dropped.  The deputy proceeded to search the vehicle and immediately found a loaded, stolen handgun tucked next to driver's seat.  The deputy also located over a pound of methamphetamine and a .40 caliber magazine in a bag on the front passenger seat, and another six pounds of meth in a bag in the back seat.

Mr. Thomas' nearby Ham Lake residence was also searched, and in his bedroom, officers found an additional pound of methamphetamine and a box of .223 caliber ammunition.  The packaging on the drugs found in both the vehicle and the bedroom were later DNA tested, recovering a major male profile that matched Mr. Thomas.  In *Miranda* interviews after his arrest, Mr. Thomas made various statements acknowledging that he was involved in the drug trade.

For investigative reasons, Mr. Thomas was not immediately charged in Anoka County and was released from custody.  But rather than take this opportunity to stay on the straight and narrow, Mr. Thomas did the opposite.  Only two weeks later, on March 5, 2021, he was stopped again in Wright County in a vehicle (with one other occupant) that was found to contain approximately three pounds of meth in the trunk.  Over $6,000 in cash was seized from Mr. Thomas' person.  (PSR ¶ 9).

In his plea agreement, Mr. Thomas has agreed that he knowingly possessed with the intent to distribute all the meth seized from his vehicle and bedroom on February 19, 2021, and the meth seized from his trunk on March 5, 2021.  (ECF No. 136 at 2-3)

Mr. Thomas was charged in Wright County with the March 5, 2021, offense and bailed out after a few days.  He then absconded.  Mr. Thomas did not show up for a

scheduled hearing in Wright County on April 22, 2021. *See* Register of Actions, Case No. 86-CR-21-1035 (Wright County); (PSR ¶ 53). He was federally indicted for the Anoka incident on April 15, 2021, and because investigators could not determine his whereabouts, the case was turned over to the U.S. Marshals Service (USMS) as a fugitive file.

On or about May 24, 2021, USMS was alerted by officers in Stearns County that Mr. Thomas and two other persons had been stopped near Sauk Centre in a vehicle that contained distributable amounts of meth and heroin, along with a loaded handgun. (*See* PSR ¶ 10). Mr. Thomas provided officers with a false name, and it took them nearly 12 hours to identify him, which they only were able to do when a friend called the station looking for him. The investigators then discovered the pending warrants out of Wright County and this Court, and Mr. Thomas was brought into federal custody.

The United States has reviewed the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office and has no outstanding objections to the recitation of the offense conduct set forth therein. (*See* PSR ¶¶ 6-11). The Government also does not object to its findings that Mr. Thomas has a total offense level of 35, a Category I criminal history, and a Guidelines range of 160 to 210 months' imprisonment. (PSR ¶ 83). The statutory mandatory minimum sentence is 120 months. (PSR ¶ 82).

As summarized in the PSR, Mr. Thomas has an extensive criminal history – but it consists largely of convictions he incurred many years ago that did not receive criminal history points for under the Guidelines. He has past felony convictions for attempted robbery (PSR ¶ 31); unlawful gun possession (PSR ¶ 32); drug possession (PSR ¶ 36); and a federal counterfeiting offense (PSR ¶ 37).

**DEFENDANT'S PSR OBJECTION**

Mr. Thomas has objected to the 2-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1). He does not object to any particular facts in the PSR, but simply disputes that they show he was in possession of the gun that was found next to his driver's seat. (ECF No. 145 at 1). In Mr. Thomas' plea agreement, the parties agreed that the Court may consider the record established at the pretrial motions hearing in resolving this dispute. (ECF No. 136 at 6). The Government thus relies here on the transcript of the hearing filed at ECF No. 102 (in particular, the testimony of Deputy Arcand; hereinafter "Tr."), as well as the previously submitted Government's Exhibit 2, which contains Deputy Arcand's body camera footage of the February 19, 2021, traffic stop. The Government does not believe any further testimonial/evidentiary hearing is necessary.

U.S.S.G § 2D1.1(b)(1) provides a 2-level upward enhancement "[i]f a dangerous weapon (including a firearm) was possessed." "The burden lies on the government to prove by a preponderance of the evidence both that the weapon was present and that it is at least probable that the weapon was connected with the offense." *United States v. Payne*, 81 F.3d 759, 762 (8th Cir. 1996). The Application Note to the Guideline directs that the "enhancement for weapon possession . . . reflects the increased danger of violence when drug traffickers possess weapons. The enhancement should be applied if the weapon was present, unless it is ***clearly improbable*** that the weapon was connected with the offense." *Id.*, Application Note 11(A) (emphasis added).

This "clearly improbable" standard is "a very low bar." *United States v. Ashburn*, 865 F.3d 997, 999 (8th Cir. 2017). This reduced standard of proof "supports the goals of

the enhancement" by "discourag[ing] drug criminals from bringing weapons anywhere near their drugs." *United States v. Anderson*, 618 F.3d 873, 880 (8th Cir. 2010). "The government need ***not*** show that the defendant used or even touched a weapon to prove a connection between the weapon and the offense." *United States v. Peroceski*, 520 F.3d 886, 889 (8th Cir. 2008) (emphasis added) (quoting *United States v. Fladten*, 230 F.3d 1083, 1086 (8th Cir. 2000) (per curiam)). Rather, "'[e]vidence that the weapon was found in the same location as drugs or drug paraphernalia usually suffices.'" *Id*. As the Eighth Circuit explained, the "well-known tendency of drug criminals to use firearms in connection with their drug activities supports an inference that a gun near the vicinity of drug activity is somehow connected to it." *Id*.

Finally, while the Government bears the burden of demonstrating a weapon was present and was probably connected with the drug offense, "'[l]ack of proof of use or actual possession' does not preclude a § 2D1.1(b)(1) adjustment; constructive possession is sufficient." *United States v. Atkins*, 250 F.3d 1203, 1213-14 (8th Cir. 2001) (quoting *United States v. McCracken*, 110 F.3d 535, 541 (8th Cir.1997)). Moreover, "ownership of either the weapon or the premises upon which the weapon is found is not required." *Atkins*, 250 F.3d 1203, 1213–14 (quoting *Payne*, 81 F.3d at 762). The Government need only establish that "a temporal and spa[t]ial relation existed between the weapon, the [offense], and the defendant." *Id*. at 1214.

Here, these standards have clearly been met by a preponderance of the evidence. To begin, it appears undisputed that the vehicle at issue in the February 19 traffic stop belonged to Mr. Thomas, and he was the driver and sole occupant when he was stopped. As reflected

on the BWC footage of the stop, Mr. Thomas told the deputy that he had purchased the vehicle the day prior, produced a title for it, and said he was working on getting the title formally transferred to his name. (Gov. Ex. 2 at 01:30-2:45, 07:30-08:25; *see also* Tr. at 62, 68).

As Deputy Arcand testified, once he began searching the vehicle, he almost immediately found a handgun holster in the center console, and then observed the firearm "tucked . . . between the driver's seat and the center console." (Tr. at 75-76). Deputy Arcand's BWC footage shows, starting around minute 13:00, how quickly he observed the firearm once he stuck his head over the driver's seat. It is simply impossible to believe that Mr. Thomas was not aware the firearm was present, in a vehicle he owned and was driving. What's more, Mr. Thomas has accepted responsibility for the pound of meth found in a bag on the front seat—a bag that also contained a loaded .40 caliber magazine (PSR ¶ 7; Tr. at 77)—and he has accepted responsibility for the pound of meth found in his bedroom—where officers also located a box of .223 ammunition (PSR ¶ 8). That gun-related items were found in multiple locations associated with Mr. Thomas and his drug supply surely suffices to show, by at least a preponderance of the evidence, that "a temporal and spatial relation existed between the weapon, the offense, and the defendant." *See Atkins*, 250 F.3d at 1214.

The Government acknowledges that the issue of Mr. Thomas' possession of the gun does not only implicate the Guidelines, but also disqualifies him from safety valve eligibility. Under 18 U.S.C. § 3553(f)(2), a defendant is not eligible for safety valve relief if he "possess[ed] a firearm or other dangerous weapon . . . in connection with the offense."

6

This of course makes good sense, since a person, like Mr. Thomas, who traffics drugs in the presence of firearms has a higher culpability. And there is no undue harshness here for Mr. Thomas; he is not the prototypical safety valve candidate who has very little criminal history. He in fact has a fairly extensive criminal history; most of it simply falls outside the time period captured by the Guidelines scoring system. And given the string of events in 2021—where Mr. Thomas was caught with a large quantity of meth and a gun on February 19, got out of custody, was caught with more meth on March 5, got out of custody, and then absconded until he was found in car with more drugs and another gun on May 24—it seems clear that the charged incident was far from an aberration.

## **THE APPROPRIATE SENTENCE**

The remaining issue before the Court is what constitutes a reasonable sentence in light of the factors enumerated in Title 18, United States Code, Section 3553(a). Based on a balancing of the issues set forth below, the Government believes a total sentence of 180 months is sufficient but not greater than necessary to achieve justice in this case.

Even looking only at the facts underlying the indictment, Mr. Thomas is a highly culpable defendant. He was trafficking large quantities of methamphetamine and was doing so while armed—all to turn a profit for himself. Mr. Thomas knows from his own experience with drug abuse the harm that this poison causes to his community. He also was no stranger to the criminal justice system. And still, Mr. Thomas believed himself to be above the law. Indeed, the video of the February 19, 2021 traffic stop exemplifies Mr. Thomas' indignant reaction to facing consequences for his actions: he becomes belligerent

toward the deputy and screams obscenities, claiming to be the victim of "harassment." (*See, e.g.*, Gov. Ex. 1 at 25:00-31:00; Gov. Ex. 2 at 26:15-28:00).

Mr. Thomas' culpability is further aggravated by the broader context. This was far from an isolated lapse in judgment. As the events of 2021 show, Mr. Thomas was repeatedly released from custody and given the opportunity to reform himself. He instead chose to thumb his nose at law enforcement, keep trafficking drugs, miss court appearances, and attempt to abscond. He made these choices notwithstanding having served several terms of imprisonment in the past—including a federal sentence of 30 months. (PSR ¶ 39). A much more serious sentence in this case is both necessary and appropriate.

Although the Government cannot attest to the veracity of all the information in the PSR concerning Mr. Thomas' biography, what is clear is that Mr. Thomas does not seem to place much accountability on himself for his repeated turns to criminal activity. Other members of his family, meanwhile, have had stable, law-abiding professions—from social worker to fire caption to car salesman. Whatever the root causes, Mr. Thomas' recent patterns have shown him to be a danger to the community, and a substantial sentence is necessary to protect the public.

Mr. Thomas' flagrant disregard for the law is embodied not just in his criminal conduct but in his actions throughout this case. Mr. Thomas did not plead until after he had dragged out these proceedings for months with dilatory and obstructionist tactics—including repeatedly delaying hearings and lodging numerous, categorically frivolous challenges to the Court's jurisdiction. (*See generally* summaries in ECF No. 91 at 1-3;

CASE 0:21-cr-00093-JRT-TNL   Doc. 150   Filed 10/11/22   Page 9 of 9

ECF No. 98 at 3-9; ECF No. 128 at 1-5). This behavior extended far beyond seeking to vindicate his constitutional rights or put the Government to its burden, as he was fully entitled to do. He has also made representations about his life and background that do not appear truthful. (*See, e.g.*, Pretrial Services Status Report at 2-4, ECF No. 111). Although the Government is advocating that Mr. Thomas receive credit for acceptance of responsibility under the Guidelines, and be sentenced within the resulting range, he should not be given further credit in the form of a downward variance.

## CONCLUSION

For the foregoing reasons, the United States respectfully recommends that the Court impose a total sentence of 180 months.

Dated:  October 11, 2022                                Respectfully submitted,

ANDREW M. LUGER
United States Attorney

/s/   *Ruth Shnider*
BY:  RUTH S. SHNIDER
ALEXANDER D. CHIQUOINE
Assistant U.S. Attorneys